IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| ALI MOHAMMED SEMREEN<br>AL-KHAWALDEH and FATIMA SOUAD<br>FANASH AL-KHAWALDEH,<br>Individually and as Personal<br>Representatives of the ESTATE<br>OF AHMED ALI MOHAMMED KHALIF<br>AL-KHAWALDEH, Deceased | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| *Plaintiffs*, | §<br>§ | Civil Action No. 6:19-cv-503-ADA-JCM |
| v. | §<br>§ | |
| BOYD A. "SKIP" TACKETT, | §<br>§ | |
| *Defendant*. | § | |

## PLAINTIFFS' MOTION TO REMAND

Plaintiffs Ali Mohammed Semreen Al-Khawaldeh and Fatima Souad Fanash Al-Khawaldeh, Individually and as Personal Representatives of the Estate of Ahmed Ali Mohammed Khalif Al-Khawaldeh, Deceased (collectively "Plaintiffs") file this motion to remand pursuant to 28 U.S.C. § 1447(c) because Defendant Boyd A. "Skip" Tackett ("Defendant") has failed to establish that removal is authorized or appropriate under 28 U.S.C. § 1442(a)(1)—the "federal officer" removal statute.

To carry his burden of demonstrating the propriety of removal under the statute, Defendant was required to provide this Court with evidence that the elements of the federal officer removal statute have been met. Defendant, however, chose not to do so, requiring the Court to remand this action back to state court for lack of subject-matter jurisdiction.

# I.   FACTUAL BACKGROUND

This case arises from the fatal crash of a Hughes 369FF helicopter, registration N530FU ("helicopter"), near Granger, Texas on August 21, 2018.[1]

The helicopter was engaged in an orientation flight as part of a civilian helicopter flight training program being provided to Plaintiffs' decedent, Ahmed Ali Mohammed Khalif al-Khalwaldeh ("Al-Khawaldeh"), a member of the Jordanian military.[2]

The helicopter departed the Georgetown Municipal Airport at an elevation of 786 feet mean sea level ("MSL") and reached an altitude of 1,450 feet MSL after traveling 9 miles.[3] At that point, the helicopter began to descend while traveling at a speed of about 100 knots. Radar last reported that the helicopter had descended to an elevation of 700 feet MSL or just 150 feet above ground level.[4]

The path of destruction created by the helicopter crash indicates that the helicopter struck the steel wires strung between a series of 36-foot tall power distribution poles in a cotton field near Granger, Texas.[5] Both Al-Khawaldeh and the instructor were killed.[6]

The purpose of the flight on the day of the crash was simply to provide Al-Khawaldeh with orientation in the local training area.[7] According to Defendant, the nine-day training course was supposed to start off slowly and gradually build towards more complex maneuvers.[8] There

---

[1]     *See* National Transportation Safety Board Aviation Accident Preliminary Report ("NTSB Preliminary Report"), attached as **Exhibit 1**, at p. 1, ¶¶1-2.

[2]     *See id.*

[3]     *Id.* at p.1, ¶3.

[4]     *Id.*

[5]     *Id.* at p. 2, ¶2.

[6]     *Id.* at p. 1, ¶1.

[7]     *Id.* at p. 1, ¶3.

[8]     *See* Deposition of Boyd A. "Skip" Tackett, attached as **Exhibit 2**, at p. 34, ll.17-25 to p. 35, ll.1-14.

was no low-altitude or "nap-of-the-earth" ("NOE") flights planned nor was there even any low-altitude or NOE flight training included in the syllabus governing Al-Khawaldeh's training.[9]

Defendant has conceded that the only way for the helicopter to have collided with the power lines or the associated poles would have been if it were operating at an altitude of 36 feet above ground level or less.[10] Defendant has also acknowledged that to operate a helicopter at that altitude under the circumstances involved in this case would have been both inappropriate and illegal.[11]

All flying done on the day of the crash was performed either by the student pilot Al-Khawaldeh at the direction and instruction of the flight instructor or by the flight instructor himself.[12] At the time of the crash, the flight instructor, who had been hired directly by Defendant, was at all times acting under the direct control and supervision of Defendant.[13]

## II.  PROCEDURAL BACKGROUND

Plaintiffs filed this case in Texas state court on July 26, 2019.[14] Defendant removed it to this Court on August 26, 2019, pursuant to 28 U.S.C. § 1442(a)(1).[15]  Defendant argues that he is entitled to removal as a "federal officer" because:

- the "training program in question was administered by the United States Army, pursuant to the terms of its agreement with" Defendant;

- the "syllabus of the training program that Al-Khawaldeh was participating in and that the flight was a part of was approved prior to its use by the United States government;"

---

[9]       *See id.* at p. 43, l.25 to p. 44, ll. 1-11. NOTE: Nap-of-the-earth ("NOE") is a type of very low-altitude flight course used in military operations to avoid enemy detection and attack in a high-threat environment.

[10]      *Id.* at p. 47, ll.6-19.

[11]      *Id.* at p. 46, ll.6 to p. 48, ll.7.

[12]      *Id.* at p. 35, ll. 17-25 to p. 36, ll.1-14.

[13]      *See id.*, at p. 21, ll.4-18; p. 24, ll.24-25 to p. 25, ll.1-9; and p. 43, ll.6-24.

[14]      *See* Defendant's Notice of Removal [Doc. 1] at ¶1.

[15]      *See id.*

- Defendant's "qualifications to perform the contract were approved by the United States Army;"

- the "United States Army approved reasonably precise procedures for operation of the [training] program … provided through documented contractual guidelines and specific approvals by the government of submissions for the program" by Defendant;

- Defendant and his employees "conformed to those government-approved procedures;" and

- "to the extent there was any danger regarding the training program, equipment, or personnel that was known to [Defendant] but not to the United States, the government was warned thereof."[16]

But Defendant has failed to provide this Court with a single piece of specific evidentiary support for any of the foregoing claims. Instead, he appears to have deemed it sufficient to simply plug his name into a rote recitation of the elements of federal officer removal statute and call it a day. Defendant is wrong.

As Defendant is well aware, he carries the burden of establishing the applicability of federal subject-matter jurisdiction and the propriety of removing this case to federal court but has elected to deprive this Court of any meaningful opportunity to make either of those essential determinations, as Plaintiffs discuss more fully below.

### III. ARGUMENT

**A.    A court must remand an action removed under the "federal officer removal" statute when the removing party is unable to show that the necessary elements are present.**

28 U.S.C. § 1442(a)(1) authorizes removal to federal court of state court civil actions brought against federal officers—or those acting under their direction—for acts or omissions committed while acting on the federal government's behalf.  *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 396–97 (5th Cir. 1998). If all of its requirements are met, this federal

---

[16]    *See id.* at ¶¶11-19.

officer removal provision may statutorily establish federal subject-matter jurisdiction where none would otherwise exist.  *See id.* at 397–400 (laying out criteria essential to federal officer removal and necessity of satisfying each to establish subject-matter jurisdiction).

To successfully remove a state lawsuit under the federal officer removal statute, a defendant who is a private entity is required to satisfy four conditions or elements: (1) that the defendant is a person within the meaning of the statute; (2) that the federal government or a federal officer actually directed the defendant to take the action complained of; (3) that the action taken by the defendant was the causal nexus of the plaintiff's claim; and (4) that a colorable federal defense exists as to the claim. *Mesa v. California*, 489 U.S. 121, 124-33 (1989).

The defendant bears the burden of establishing that there is federal jurisdiction over the controversy.  *Winters*, 149 F.3d at 397. To demonstrate the propriety of removal based on federal officer jurisdiction, the removing party must satisfy its burden of showing that each condition necessary to establish federal officer jurisdiction is present.  *See id. generally* at 397–401; *see also Watson v. Philip Morris*, 551 U.S. 142, 156 (2007) (rejecting federal officer removal argument and remanding where defendant failed to provide evidentiary support necessary to assertion of government contractor defense).  Doubts as to whether each condition required for federal officer removal has been met are to be resolved *against* the exercise of federal jurisdiction.  *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

**B.    Defendant has utterly failed to provide the Court with any evidence that the elements of federal officer removal jurisdiction have been met.**

With the possible exception of the first element—that is, the low bar as to whether Defendant is a "person" within the meaning of the federal officer removal statute—Defendant has declined to present the Court with any evidence that he meets the conditions necessary to qualify for such removal.

To satisfy the second element of federal officer removal, a defendant must be able to demonstrate that the federal government exercised "direct and detailed control" over the defendant's conduct complained of. *N.J. Dep't of Envtl. Prot. v. ExxonMobil Corp.*, 381 F. Supp. 2d 398, 404 (D.N.J. 2005) (citing *Reed v. Fina Oil & Chem. Co.*, 995 F. Supp. 705, 710 (E.D. Tex. 1998)). To do so, a defendant must establish that there was "strong government intervention" in the activities or conduct complained of and that the state court lawsuit is "based upon actions taken pursuant to federal direction." *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992).

Defendant should have provided the Court with evidence demonstrating that he had received specific instructions from a federal officer or that he was required to follow detailed regulations or specifications that compelled the specific conduct complained of. *See, e.g.*, *Winters*, 149 F.3d at 399 (observing that the government had required the government contractor to manufacture Agent Orange according to detailed specifications contained in the government's contracts). But no such evidence has been produced to this Court.

Similarly, to meet the third element of federal officer removal, Defendant should have included with its notice of removal competent evidence that the complained of acts or omissions by Defendant were taken or made specifically pursuant to a federal officer's direction or detailed specifications. *Winters*, 149 F.3d at 399–400 (opining that the "government's detailed specifications concerning the make-up, packaging, and delivery of Agent Orange" demonstrated that the defendants had specifically "acted pursuant to federal direction"). But here again, Defendant provided no evidence to the Court to support this element.

Finally, with respect to the fourth element, Defendant must do more than simply plead a federal defense—in this case, the government contractor defense—he must plead a *colorable*

federal defense.  *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F.Supp.2d 653, 664–65 (E.D. Tex. 1999).  In other words, the defense must appear to be legitimate and reasonably asserted, given the evidence presented and current law.  *See id.*  This, however, is something that Defendant cannot do because he has failed to present this Court with any evidence at all that would support a colorable assertion of the government contractor defense in this case.

To be able to assert the "government contractor defense" as a colorable federal defense, Defendant must adduce actual evidence supporting the following criteria: 1) that the federal government approved reasonably precise specifications and requirements for his training protocols and procedures as would preempt state law requirements; 2) Defendant's execution of his training protocols and procedures conformed to those reasonably precise specifications and requirements; and 3) Defendant warned the federal government about the dangers of deploying those precise specifications and requirements in his training protocols and procedures where such dangers were known to Defendant but not to the federal government. *See Hudgens v. Bell Helicopter/Textron*, 328 F.3d 1329, 1335 (11th Cir. 2003) (describing necessary elements to assertion of government contractor defense as recited in *Boyle v. United Tech. Corp.*, 487 U.S. 500, 512 (1988)).

Instead of providing the Court with actual evidence to support his claim that he has a colorable federal defense in the form of the "government contractor defense," however, Defendant abandons his obligations and simply offers a rote recitation of its elements in his notice of removal. This is wholly inadequate and justifies the immediate remand of this case to state court for lack of subject-matter jurisdiction.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiffs respectfully ask the Court to grant this motion and remand this state court action to 146th Judicial District Court for Bell County, Texas from which it was improperly removed.

Respectfully submitted this 19th day of September, 2019,

> **SLACK DAVIS SANGER L.L.P.**
> Michael L. Slack
> Texas State Bar No. 18476800
> Donna J. Bowen
> Texas State Bar No. 00790346
> 2705 Bee Cave Road, Suite 220
> Austin, Texas 78746
> Telephone: (512) 795-8686
> Telecopier: (512) 795-8787
> mslack@slackdavis.com
>
>
> /s/ Michael L. Slack
> **MICHAEL L. SLACK**
> **ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served upon

counsel of record in accordance with Federal Rules of Civil Procedure on this 19th day of

September, 2019.

/s/ Michael L. Slack
MICHAEL L. SLACK